NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000001
29-JUL-2016
11:43 AM

NO. CAAP-15-0000001

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
TEDDY MUNET, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 12-1-1114)

SUMMARY DISPOSITION ORDER
(By: Nakamura, Chief Judge, Foley and Ginoza, JJ.)

Defendant-Appellant Teddy Munet (Munet) appeals from the Judgement of Conviction and Sentence filed on December 3, 2014, in the Circuit Court of the First Circuit (circuit court).[1] Munet was convicted of: (1) Place to Keep Pistol or Revolver in violation of Hawaii Revised Statutes (HRS) § 134-25 (2011);[2] (2)

---

[1] The Honorable Glenn J. Kim presided.

[2] HRS § 134-25 provides:

> [§134-25] **Place to keep pistol or revolver; penalty.**
> (a) Except as provided in sections 134-5 and 134-9, all firearms shall be confined to the possessor's place of business, residence, or sojourn; provided that it shall be lawful to carry unloaded firearms in an enclosed container from the place of purchase to the purchaser's place of business, residence, or sojourn, or between these places upon change of place of business, residence, or sojourn, or

(continued...)

Promoting Dangerous Drug in the Second Degree in violation of HRS § 712-1242(1)(b)(i) (2014);[3] and (3) Unlawful Use of Drug Paraphernalia in violation of HRS § 329-43.5(a) (2010).[4]

Munet contends the circuit court erred: (1) because it did not instruct the jury that it must unanimously agree on which act constituted the conduct element for the offense of Place to

---

[2](...continued)
          between these places and the following:
                    (1) A place of repair;
                    (2) A target range;
                    (3) A licensed dealer's place of business;
                    (4) An organized, scheduled firearms show
          or exhibit;
                    (5) A place of formal hunter or firearm
          use training or instruction; or
                    (6) A police station.
          "Enclosed container" means a rigidly constructed
          receptacle, or a commercially manufactured gun case,
          or the equivalent thereof that completely encloses the
          firearm.
                    (b) Any person violating this section by
          carrying or possessing a loaded or unloaded pistol or
          revolver shall be guilty of a class B felony.

[3]  HRS § 712-1242 provides in pertinent part:

          **§712-1242 Promoting a dangerous drug in the second
          degree.**  (1) A person commits the offense of promoting a
          dangerous drug in the second degree if the person knowingly:
          . . . .
                    (b) Possesses one or more preparations, compounds,
                        mixtures, or substances of an aggregate weight of:
                    (i) One-eighth ounce or more, containing
                        methamphetamine, heroin, morphine, or cocaine
                        or any of their respective salts, isomers, and salts
                        of isomers[.]
          . . . .
                    (2) Promoting a dangerous drug in the second degree is
          a class B felony.

[4]  HRS § 329-43.5(a) provides:

          **[§329-43.5] Prohibited acts related to drug
          paraphernalia.**  (a) It is unlawful for any person to use, or
          to possess with intent to use, drug paraphernalia to plant,
          propagate, cultivate, grow, harvest, manufacture, compound,
          convert, produce, process, prepare, test, analyze, pack,
          repack, store, contain, conceal, inject, ingest, inhale, or
          otherwise introduce into the human body a controlled
          substance in violation of this chapter. Any person who
          violates this section is guilty of a class C felony and upon
          conviction may be imprisoned pursuant to section 706-660
          and, if appropriate as provided in section 706-641, fined
          pursuant to section 706-640.

Keep Pistol or Revolver; and (2) by sentencing Munet to a concurrent term of imprisonment for the three convicted crimes in this case to be served consecutively with a sentence Munet was serving from another case.

Upon careful review of the record and briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we resolve Munet's points of error as follows and affirm.

## I.  Background

On July 31, 2012, in this case, a grand jury indicted Munet for Murder in the Second Degree in violation of HRS §§ 707-701.5 (2014) and 706-656 (1993 & Supp. 2013) (Count I); Ownership or Possession Prohibited of Any Firearm or Ammunition by a Person Convicted of Certain Crimes, in violation of HRS § 134-7(b), (h) (2011) (Count II); Carrying or Use of a Firearm in the Commission of a Separate Felony, in violation of HRS § 134-21 (2011) (Count III); Place to Keep Pistol or Revolver, in violation of HRS § 134-25 (Count IV); Promoting a Dangerous Drug in the Second Degree, in violation of HRS § 712-1242(1)(b)(i) (Count V); and Unlawful Use of Drug Paraphernalia, in violation of HRS § 329-43.5(a) (Count VI).

On September 4, 2013, in a separate case (Cr. No. 13-1-0325), and while this case was pending, Munet was convicted of Escape in the Second Degree (Count I) and Robbery in the Second Degree (Count II).  He was sentenced to five (5) years of imprisonment for Count I and ten (10) years of imprisonment for Count II, to run concurrently with each other.

On July 16, 2014, in this case, the circuit court entered Munet's no contest plea for Promoting Dangerous Drug in the Second Degree (Count V) and Unlawful Use of Drug Paraphernalia (Count VI).

On August 5, 2014, a jury trial commenced in this case. On the same day, after the State of Hawaiʻi (State) gave its

3

opening statement to the jury, the circuit court *sua sponte* orally entered a Judgment of Acquittal on Count II, Ownership or Possession Prohibited of Any Firearm or Ammunition by a Person Convicted of Certain Crimes. At trial, the State's witness, Kaipo Octubre (Octubre), and Munet gave conflicting testimony about the events that took place on July 19, 2012, the date that the remaining Counts (I, III, and IV), were alleged to have occurred.

On August 21, 2014, after a six day jury trial, the jury found Munet not guilty on Count I (Murder in the Second Degree), not guilty on Count III (Carrying or Use of Firearm in the Commission of a Separate Felony), and guilty on Count IV (Place to Keep Pistol or Revolver).

On November 21, 2014, the State filed a Motion For Consecutive Term Sentencing. On December 3, 2014, the circuit court held a hearing and determined that Munet would serve the terms of imprisonment for Counts IV, V, and VI concurrently, but consecutively with the sentence in Cr. No. 13-1-0325.

On December 3, 2014, the circuit court filed the Judgment of Conviction and Sentence. On January 2, 2015, Munet timely filed his Notice of Appeal.

## II. Unanimity Instruction

Munet contends that the circuit court violated his constitutional right to a unanimous jury verdict when it did not instruct the jury that it must unanimously agree on which act constituted the conduct element for Count IV Place to Keep Pistol or Revolver, under State v. Arceo, 84 Hawai'i 1, 928 P.2d 843 (1996).

During the settling of jury instructions, the circuit court stated that it did not think the standard unanimity instruction[5] was necessary, but asked both the State and Munet if

---

[5] The circuit court's standard unanimity instruction reads as follows:

INSTRUCTION NO. 8.02

(continued...)

4

they would prefer the circuit court to give it. The State deferred to the court and Munet's counsel withdrew his initial request for the unanimity instruction. Given these circumstances, where a defendant challenges the trial court's jury instructions for the first time on appeal, the supreme court held in State v. Nichols, 111 Hawaii 327, 337, 141 P.3d 974 (2006), that "once instructional error is demonstrated, we will vacate, without regard to whether timely objection was made, if there is a reasonable possibility that the error contributed to the defendant's conviction, i.e., that the erroneous jury instruction was not harmless beyond a reasonable doubt."

> In Arceo, the supreme court held
>
>> that when separate and distinct culpable acts are subsumed within a single count charging a sexual assault—any one of which could support a conviction thereunder—and the defendant is ultimately convicted by a jury of the charged offense, the defendant's constitutional right to a unanimous verdict is violated unless one or both of the following occurs: (1) at or before the close of its case-in-chief, the prosecution is required to elect the specific act upon which it is relying to establish the "conduct" element of the charged offense; or (2) the trial court gives the jury a specific unanimity instruction, i.e., an instruction that advises the jury that all twelve of its members must agree that the same underlying criminal act has been proved beyond a reasonable doubt.

87 Hawai'i at 32-33, 928 P.2d at 874-75; see also State v. Pecpec, 127 Hawai'i 20, 35, 276 P.3d 589, 604 (2012) ("The purpose of a specific unanimity instruction is to protect a defendant's constitutional right to a unanimous verdict, where jurors otherwise would not know they are required to unanimously agree that the defendant had committed the same act."). In

---

[5] (...continued)

> UNANIMITY INSTRUCTION
> The law allows the introduction of evidence for the purpose of showing that there is more than one [act] [omission] [item] upon which proof of an element of an offense may be based. In order for the prosecution to prove an element, all twelve jurors must unanimously agree that [the same act] [the same omission] [possession of the same item] has been proved beyond a reasonable doubt.

5

<u>Arceo</u>, the supreme court further concluded

> insofar as the circuit court erroneously failed to observe either of the options mandated in the preceding paragraph, Arceo's substantial constitutional right to unanimous jury verdicts was prejudiced in such a manner as to give rise to plain error. And inasmuch as we cannot say that there was no reasonable possibility that the circuit court's error contributed to Arceo's convictions, we hold that the error was not harmless beyond a reasonable doubt.

<u>Arceo</u>, 84 Hawai'i at 33, 928 P.2d at 875. Thus, the supreme court vacated Arceo's convictions and remanded the matter for a new trial. <u>Id.</u> Further, the supreme court has applied the unanimity rule from <u>Arceo</u> beyond the context of sexual assault charges. <u>See</u> <u>State v. Hironaka</u>, 99 Hawai'i 198, 207, 53 P.3d 806, 815 (2002) (defendant found guilty of promoting a dangerous drug in the third degree).

In this case, unlike in <u>Arceo</u>, only one act could have supported the underlying offense of Place to Keep Pistol or Revolver. The jury instruction for Place to Keep Pistol or Revolver read in pertinent part as follows:

> In Count IV of the Indictment, the Defendant, Teddy Munet, is charged with the offense of Place to Keep Pistol or Revolver.
> A person commits the offense of Place to Keep Pistol or Revolver if he carries or possesses a pistol or revolver, in a place other than his place of business, residence, or sojourn, without a license to carry.
> There are nine material elements of the offense of Place to Keep Pistol or Revolver, each of which the prosecution must prove beyond a reasonable doubt.
> These nine elements are:
> 1. <u>That on or about the 19th day of July, 2012, in the City and County of Honolulu, State of Hawaii, the Defendant knowingly carried or possessed the object in question</u>; and
> 2. That the object in question was a loaded or unloaded pistol or revolver; and
> 3. That at the time he carried or possessed the object in question, the Defendant believed, knew, or recklessly disregarded the substantial and unjustifiable risk, that the object was a loaded or unloaded pistol or revolver; and
> 4. <u>That at that time, the Defendant was in a place other than his place of business, residence, or sojourn</u>; and
> 5. That at that time, the Defendant believed, knew, or recklessly disregarded the substantial and unjustifiable risk that he was in a place other than his place of business, residence, or sojourn; and
> 6. That at that time, the Defendant was not carrying an unloaded firearm in an enclosed

container from the place of purchase to his place of business, residence, or sojourn or between those places and a place of repair, target range, a licensed dealer's place of business, an organized, scheduled firearms show or exhibit, a place of formal hunter or firearm use training or instruction, or a police station; and

7.  That at that time, the Defendant believed, knew, or recklessly disregarded the substantial and unjustifiable risk that he was not carrying an unloaded firearm in an enclosed container from the place of purchase to his place of business, residence, or sojourn or between those places and a place of repair, target range, a licensed dealer's place of business, an organized, scheduled firearms show or exhibit, a place of formal hunter or firearm use training or instruction, or a police station; and

8.  That at that time, the Defendant did not have a license to carry; and

9.  That at that time, the Defendant believed, knew, or recklessly disregarded the substantial and unjustifiable risk that he did not have a license to carry.

(Emphasis added.) Thus, the jury was instructed that to find Munet guilty of Place to Keep Pistol or Revolver, all the elements of the offense must have been satisfied on or about July 19, 2012.

Munet contends that Melia Vidal (Vidal) and Catherine Zapata, also known as Nicky (Zapata), testified to multiple and distinct culpable acts that could have established the conduct element of the offense of Place to Keep Pistol or Revolver. However, neither Vidal's nor Zapata's testimony about Munet's possession of guns was specific to on or about the date of July 19, 2012.

Vidal testified that Munet owned two guns, that from February of 2012, when she first met Munet, she saw him with a gun everyday, and he often kept the guns in his Durango and Honda. Vidal also testified that in April 2012, she fired one of Munet's guns towards the water at the beach. The State asked questions about, and Vidal gave detailed testimony regarding, her interactions with Munet on July 19, 2012. However, the State did not ask Vidal any questions about whether she saw Munet with a gun at any point on or about July 19, 2012, and Vidal did not

testify specifically about Munet having a gun on or about July 19, 2012. Moreover, even though Vidal said she saw Munet with a gun everyday, the State made no effort to establish the location she saw Munet in possession of a gun on or about July 19, 2012, as would be necessary for the charged offense. Thus, the State did not attempt to develop facts through Vidal that would be necessary to establish required elements for the offense of Place to Keep Pistol or Revolver on or about July 19, 2012.

Zapata testified that, from the time she and Munet renewed their relationship toward the end of April 2012, Munet owned two guns and she saw a black one almost every time she was with Munet. Zapata also saw Munet put the guns under the futon in the shed where he lived and in his Honda and Durango. In April 2012, Zapata saw Munet fire a gun into a tree while they were on a hike near the Old Pali Road. Zapata also testified that Munet locked Zapata in the tool shed where Munet resided and, sometime in June 2012, Munet threatened her with a silver gun while they were in the tool shed. However, Zapata's testimony only referenced the time period between February 2012 and late June 2012.

By contrast, Kaipo Octubre (Octubre), the State's witness, testified specifically about Munet handling a gun on July 19, 2012. Octubre testified that on July 19, 2012, he was with Munet and Billy Fallau (Fallau) at a State Park on Kappa'a Quarry Road. After walking down a trail for about a minute, Octubre, Munet, and Fallau stopped at a clearing. Octubre testified that, after a period of time at the clearing, he saw Munet reach into Munet's pocket, pull out a gun, and shoot Fallau in the back of the head. Octubre did not testify to seeing Munet with a gun at any other point on or about July 19, 2012.

When questioning the witnesses, the State focused its development of the facts to support the charge of Place to Keep Pistol or Revolver on Munet's conduct of taking a loaded firearm to a State Park on Kapa'a Quarry Road and using it to shoot Fallau. The State made no attempt to develop facts to support

Munet possessing a gun in any other instance on or about July 19, 2012. See State v. Ortiz, 91 Hawaiʻi 181, 198, 981 P.2d 1127, 1145 (1999); State v. Maumalanga, 90 Hawaiʻi 58, 63-64, 976 P.2d 372, 377-78 (1998). Given the testimony in this case, Munet was only identified as possessing a gun at one time and in one location on or about July 19, 2012. Thus, there was only one specific act that the State relied on to establish the elements of the charged offense, Place to Keep Pistol or Revolver. Therefore, Munet's right to a unanimous jury verdict was not violated when the circuit court did not give the standard unanimity instruction in this case.

## III. Consecutive Sentencing

Munet contends that the circuit court erred when it imposed consecutive sentencing on Munet's term of imprisonment.

"A sentencing judge generally has broad discretion in imposing a sentence.... And, 'generally to constitute an abuse it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.'" State v. Hussein, 122 Hawaiʻi 495, 503, 229 P.3d 313, 321 (2010) (citation and brackets omitted).

On appeal, Munet contends that a "sentencing court commits plain error where it relies on uncharged and unsubstantiated illegal conduct to justify the imposition of a consecutive sentence." Munet cites to State v. Vellina, 106 Hawaiʻi 441, 106 P.3d 364 (2005) and State v. Nunes, 72 Haw. 521, 824 P.2d 837 (1992) to support his contention.

In Vellina, the circuit court relied on an unsubstantiated claim and in Nunes, the circuit court relied on an uncharged crime as support for imposing consecutive sentences. See Vellina, 106 Hawaiʻi at 449, 106 P.3d at 372; Nunes, 72 Haw. at 525, 824 P.2d at 840. However, in this case, unlike in Vellina and Nunes, the circuit court based its decision to impose consecutive term sentencing on evidence and testimony in the record.

9

Munet contends that the circuit court "justified the imposition of the consecutive sentence on the theory that [Munet] was high on drugs and carrying guns with him 'every time he was driving his cars.'"  Munet contends that "nothing in the record supported the finding that [Munet] was under the influence of illegal drugs when he was in possession of a gun."  Munet also challenges the circuit court's use of the term "undisputed" when talking about the gun evidence because when Munet testified, he disputed ever owning a gun.

The circuit court stated the following on the record with regard to consecutive sentencing:

> Now, as to the State's motion for consecutive term sentencing, I'm looking at 706-606 which are the factors. The court is mandated to take into consideration both and imposed in the sentence period, and also in deciding on a motion for consecutive term sentencing. One is the nature and circumstances of the offense, in this case the offenses, and the history and characteristics of the defendant. And this court finds most compelling in that regard the history and characteristics of the defendant. I mean, you know, the PSI, when it comes to the prior criminal history of Mr. Munet, I mean, it's -- it goes on page after page after page, not surprisingly. It's a long and unfortunately varied record of prior criminal activity ever since Mr. Munet was a juvenile. Topped off by the convictions that I've already handed down, and the sentences I've already handed down for the most recent crimes except for these, and that is the -- those were all as a result of the escape.
>
> Now, I understand Mr. Harada is doing his job in his usually exemplary fashion, doing the best he can for his client. But, with all due respect, I take complete issue with your characterization, Mr. Harada, of the attempted robbery. I mean, that woman must have been absolutely terrified. I mean, she's, I think, just driving to work in her own car, and along comes Mr. Munet and tries to pull her out of her own car. I mean, that conduct is just egregious and inexcusable, and that's part of his prior record here.
>
> So then I look at 2. "A" is to reflect the seriousness of the offense, promote respect for law, to provide just punishment for the offense. "B" is adequate deterrence. "C" is to protect the public from further crimes. None of the authority that I'm familiar with says that the court must give equal weight to each -- to each of these factors, et cetera. And, to me, 2C just jumps out at the court for the reasons I've already -- for some of the reasons I've already stated that that prior robbery, attempted robbery. And what we got here is a place to keep pistol. And, basically, the undisputed evidence at trial was that it wasn't a one-time thing. I mean, he kept guns in his cars in special compartments in his cars. Basically, you know, every time he was driving his cars, he had these guns with him. I don't think it takes a rocket scientist to figure out how dangerous that is, and especially somebody with Mr. Munet's

10

criminal history.

> And then Count V is a drug offense, but he's in possession of, you know, not negligible amounts of these drugs. And, I mean, drugs and guns, you put them together and he's already got a track record on this attempted robbery. I think, to protect the public, I cannot, in good faith, give Mr. Munet concurrent terms as far as this one concurrent with the attempted robbery. That, I am not going to do. I don't think it would be fair. I don't think it would be just. The open tens and the open fives for Counts IV, V, and VI for this offense will all be served concurrently, one with the other. But they will be served -- the concurrent ten, ten, and five will be served consecutively with the open ten and the open five that I've already given him for the attempted robbery and escape. Those were concurrent. These are concurrent, but they will be served consecutively, one with the other.

(Emphasis added.)

In discussing HRS § 706-606(1) (1993), the "nature and circumstances of the offense and the history and characteristics of the defendant[,]" the circuit court found Munet's criminal history "most compelling[.]"  The circuit court stated that Munet's criminal history is "a long and unfortunately varied record of prior criminal activity ever since Mr. Munet was a juvenile."  In discussing HRS § 706-606(2), the circuit court stated that the factor in section (2)(c), "to protect the public from further crimes of the defendant," "jumps out at the court" because of the prior robbery for which Munet was already sentenced.  The circuit court also referenced that it was undisputed that Munet carried a gun and also referenced that Munet was convicted of a drug offense as well.

Contrary to Munet's contention, the circuit court did not state that Munet was "high on drugs and carrying guns with him 'every time he was driving his cars.'"  Munet correctly points out that there was actually disputed evidence as to whether Munet carried a gun.  At least one witness testified that he had never seen Munet with a gun and Munet himself testified that he did not own a gun.  However, there was evidence in the record based on testimony from Vidal, Zapata, and Octubre that Munet owned at least one gun and that he often stored a gun in his Honda Accord and his Durango.  Further, as noted previously, Vidal testified she saw Munet with a gun everyday, and Zapata

11

testified she saw a gun almost every time she was with Munet. Thus, any error by the circuit court in stating that the evidence was "undisputed" that Munet carrying a gun "wasn't a one-time thing," was harmless. Given the record, the circuit court did not abuse its discretion in imposing consecutive sentences.

Therefore,

It IS HEREBY ORDERED that the Judgment of Conviction and Sentence filed on December 3, 2014, in the Circuit Court of the First Circuit is affirmed.

DATED: Honolulu, Hawaiʻi, July 29, 2016.

On the briefs:

William H. Jameson, Jr.,
for Defendant-Appellant.

Brandon H. Ito,
Deputy Prosecuting Attorney,
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge